COBB, Judge.
Pursuant to a September 10, 1999, indictment, Michael Lee Wilson was charged with theft of property in the first degree, a violation of § 13A-8-3(b), Ala.Code 1975. This charge is represented by Etowah Circuit Court case number CC-99-1029. Pursuant to an indictment returned on December 13, 1999, Wilson was charged with one count of burglary in the third degree, a violation of § 13A-7-7, Ala.Code 1975, and three counts of theft in the first degree, violations of § 13A-8-3(b), Ala.Code 1975. The Etowah Circuit Court assigned each count under this indictment a separate case number: CC-99-1434.01 through CC-99-1434.04.
Wilson entered guilty pleas to each charge and was sentenced in case no. CC-99-1029, theft of property in the first degree, to 20 years in prison; in case no. CC-99-1434.01, burglary in the third degree, to 10 years in prison; in case no. CC-99-1434.02, theft of property in the first degree, to 20 years in prison; in case no. CC-99-1434.03, theft of property in the first degree, to 20 years in prison; in case no. CC-99-1434.0, theft of property in the first degree, to 20 years in prison. These sentences were to run concurrently with each other and with other sentences previously imposed upon Wilson.
The case action summary sheet in case no. CC-99-1029 reflects that on October 23, 2000, the report on the mental evaluation ordered by William W. Cardwell, Jr., Circuit Judge of Etowah County, on November 24, 1999, and performed by Melissa V. Clinger, a certified forensic examiner, on May 18, 2000, was filed in the circuit court. Among the findings in this evaluation was that Wilson “was only partially oriented.” (Supplement record at 6.) “School records consistently reveal intellectual functioning in the Moderately Mental Retardation range of ability (IQ of 40’s and 50’s on standard measures.)” (Supplement record at 5-6.)
As to Wilson’s competency to stand trial, the report concluded:
“[T]here are barriers due to Mr. Wilson’s current intellectual functioning and knowledge/comprehension that prevent him from serving in the role of defendant at this time. It should be noted that he was very agreeable and eager to please and would often nod in assent when it was questionable whether he truly grasped a concept.... Should he enter a plea bargain, it may be necessary to query the defendant carefully to ensure he fully understands the present *1227 ed options and their consequences clearly before accepting a plea bargain. Mr. Wilson may require information to be repeated to him several times and/or reworded in more simple language to optimize the chance that he will comprehend it.”
Supplement record at 9.
As a result of the evaluation, Clinger referred Wilson for screening by the Region I Division of the Department of Mental Health and Mental Retardation for assessment. Based on the results of that assessment, Clinger advised Judge Card-well in a letter dated October 10, 2000, that it was her recommendation “that an order be issued charging the Division of Mental Retardation to perform [the training Wilson needed that was specified in the letter.]” (Supplemental record at page 4.) Nothing in the record indicates that any action was taken on Clinger’s recommendation.
The guilty-plea proceedings for all of the above charges began on October 23, 2001, but were continued until February 28, 2002, when they were completed. No reference was made to the mental evaluation at either of the guilty-plea proceedings.
Cases no. CC-99-1434.01, -1434.02, and -1434.03 were addressed during the guilty-plea proceedings held on October 23, 2001. At that time, the trial court referred Wilson to the “Explanation of Rights and Plea of Guilty” form signed by Wilson and his attorney. The trial court inquired of Wilson whether his attorney had gone over the document with him thoroughly and in detail. The trial court also asked Wilson whether his attorney had “explained everything contained in [the document] to [Wilson]” and whether Wilson was “certifying to [the trial court] that [he] underst[oo]d what this is about?” (R. 4-5.) Wilson responded “[y]es, sir,” to all of the trial court’s -questions. (R. 5.) Wilson also responded “yes, sir” when asked whether he understood that he was waiving his right to a jury trial, whether he understood the possible range of sentence, and whether he committed the charged offense. Based on the above, the trial court accepted Wilson’s plea of guilty.
At the February 28, 2002, proceedings, the trial court addressed case no. CC-99-1029 and case no. CC-99-1434.04 and other charges not relevant to this appeal. After making reference to what had occurred at the October proceedings, the trial court again referred Wilson to the “Explanation of Rights and Plea of Guilty” form signed by Wilson and his attorney and proceeded in a similar manner as at the October proceedings. However, Wilson’s defense attorney stated the following.
“MR. McWHORTER (defense counsel): I just want to say for the record that he assured me he understood all the charges and everything he is charged with and everything he is giving up. He cannot read or write so I explained all that information and the charges in the indictments to him.
“THE COURT: Pretty much word-for-word then?
“MR. McWHORTER: I don’t know word-for-word. I paraphrased. I told him everything he was giving up and all his rights and everything he was charged with and the range of punishment.
“THE COURT: Well, we have already gone through this process last month with some detail with him.
“MR. McWHORTER: I understand.
“THE COURT: Have you got a question?
“THE DEFENDANT: Yes, sir. I want to know when I will get my time sheet.
“THE COURT: Time sheet?
*1228 “MR. McWHORTER: We will talk about that later. Okay?”
(R. 24-25.)
The trial court accepted Wilson’s guilty plea following a brief discussion concerning restitution.
As best we can discern, Wilson contends on appeal that he should have been allowed to withdraw his guilty plea for the following reasons: 1) Wilson’s mental deficiencies prevented his knowingly understanding the consequences of pleading guilty and voluntarily doing so; and 2) trial counsel was ineffective because counsel did not exercise due diligence in preparing for trial because counsel did not ascertain whether Wilson was mentally competent to stand trial or to enter a guilty plea.[1]
“Whether a defendant should be allowed to withdraw a guilty plea is a matter within the discretion of the trial court, whose decision will not be disturbed on appeal absent a showing of abuse of that discretion.” Ex parte Blackmon, 734 So.2d 995, 997 (Ala.1999), citing Boykin v. State, 361 So.2d 1158, 1160 (Ala.Crim.App.1978).
This Court’s opinion in Blankenship v. State, 770 So.2d 642 (Ala.Crim.App.1999), controls Wilson’s contention that his guilty plea was involuntary because he was not competent to knowingly enter a guilty plea. We quote extensively from Blankenship:
“The appellant, Leslie Orrin Blankenship, appeals from his conviction entered on this guilty plea to murder, a violation of § 13A-6-2, Ala.Code 1975. He was sentenced to life imprisonment.
“The appellant argues that his guilty plea was involuntary because, he says, he was incompetent at the time he entered the plea. In support of his argument, the appellant states that the initial report of the Department of Mental Health and Mental Retardation said that he was incompetent to stand trial. He argues that on the basis of a second report by the Department of Mental Health and Mental Retardation indicating that he was competent to stand trial, the trial court allowed him to enter a guilty plea, without conducting a hearing on the issue of his competency or finding that he was competent to stand trial, as required by Rule 11.6(g) and 11.7(c), Ala.R.Crim.P. There is no evidence in the record that a hearing was held on the issue of the appellant’s competency or that the appellant entered a stipulation as to his competency.
“ ‘Trial of a person who is incompetent violates the due process guarantees. Therefore, when a trial court is faced with facts that create a reasonable and bona fide doubt as to the mental competency of the defendant to stand trial, the trial court must take steps to assure that a reasonable legal determination of competency is reached. In other words, in such situations, the trial court must inquire into the defendant’s competency, generally by conducting a competency hearing.’
“Ex parte Janezic, 723 So.2d 725, 728 (Ala.1997) (citations omitted). Additionally, it is well settled that, in order for a *1229 guilty plea to be valid, the trial court must determine that the plea is made voluntarily and intelligently. Therefore, before accepting the plea, a trial court is required to conduct a factual inquiry to determine if the plea is made voluntarily with an understanding of the nature of the charge and of the consequences of the plea. The record of the plea proceedings must affirmatively reflect sufficient facts from which such a determination could be made. Although the trial court’s inquiry on these matters need not follow any particular pattern, the inquiry must be sufficient for the trial court to determine that the defendant understands the charges against him and the consequences of his plea and that the defendant’s plea is voluntary. See Trice v. State, 601 So.2d 180 (Ala.Cr.App.1992).
“Here, the record is silent as to whether the trial court conducted a competency hearing or made any inquiry into the appellant’s competency at the time he entered his plea. An examination of the record reveals that the Department of Mental Health and Mental Retardation initially found that the appellant was incompetent to stand trial; thus, there was a reasonable doubt as to his competency at the time he entered his plea.”
Blankenship v. State, 770 So.2d at 643.
Based on Blankenship, we find that the trial court should have held a competency hearing before denying Wilson’s motion to withdraw his guilty plea. Therefore, this cause is remanded to the trial court with the same directions as in Blankenship:
“This cause is remanded to the trial court for that court to conduct a hearing on the issue of the appellant’s competency at the time he entered his plea. At the competency hearing, the burden of proof is upon the State to show that the appellant was competent at the time he entered his guilty plea. See Lackey v. State, 615 So.2d 145, 152 (Ala.Cr.App.1992) (‘Once the defendant has met his burden of production by presenting evidence that he is incompetent to stand trial, the State must then prove that the defendant is competent.’). The trial court should be able to conduct a meaningful inquiry into the appellant’s competency at the time he entered his plea based upon the psychologist’s finding of competence, the trial court’s observations of the appellant during the guilty plea proceedings, and the observations of the appellant’s attorneys before, during, and after the appellant entered the plea. See Ex parte Janezic, [723 So.2d 725 (Ala.1997) ].
“If the trial court concludes that the appellant was, in fact, competent at the time he entered his plea, it should so state in a written order containing specific findings of fact. Alternatively, if the trial court determines that the appellant was incompetent at the time he entered his plea, it should allow the appellant to withdraw his plea and transfer the appellant to the custody of the Department of Mental Health and Mental Retardation to await further proceedings as to any report of competency.
“We pretermit discussion of additional issues raised by the appellant concerning an ineffective-assistance-of-trial-counsel claim until a return is made to this Court. Due return shall be made with this Court within 65 days of the date of this opinion.”
Blankenship v. State, 770 So.2d at 643-44.
*1230 REMANDED WITH DIRECTIONS. 
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

. Wilson also claimed on appeal that the "missing" mental evaluation, attached to Wilson’s brief as exhibit A, constitutes newly discovered evidence entitling Wilson to withdraw his plea. However, pursuant to this Court’s order of February 13, 2003, the circuit court has supplemented the record with the mental evaluation. Thus, this claim is now moot.